No. 14,577.

ROSENBERG, doing business as BARNUM NEWS *v.* DONOVAN, doing business as EDNA CASH GROCERY.

(106 P. [2d] 352)

Decided September 16, 1940.

Mr. J. H. Boutcher, for plaintiff in error. ·

No appearance for defendant in error.

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

This is a suit on a purported contract for newspaper advertising. Plaintiff in error, a publisher, who was plaintiff below, sued on the contract in a justice of the peace court where the matter was tried without a jury, the court deciding in favor of the defendant, defendant in error, who conducts a small grocery store in the village of Barnum. On appeal to the county court the matter was tried to a jury, which also found for defendant. Reference will be made to the parties as plaintiff and defendant.

The writing upon which the suit was based is in words and figures as follows:

"Denver, Colorado Date Sept. 3rd 1936

"Gentlemen:—You are hereby authorized to insert our advertisement of four column inches in The Barnum News for a period of 52 weekly issues for which I agree to pay the rate of 50 cents per column inch per issue. This rate guarantees the advertiser a house-to-house distribution in the entire Barnum district.

"Total inches: 4 each week. Firm name: Edna's Cash Gro.

By L. A. Donovan

"Amount $2.00 each week." Address 700 Quitman.

Endorsed on the back of this document was a credit of twelve dollars, which was paid by defendant in gro-

ceries. It is admitted that the "ad" was run for the full period of fifty-two weeks, which, at the stipulated price, would total $104. Suit was for $92, the balance due after deducting the twelve-dollar credit. Defense was cancellation for alleged failure of the guaranteed house-to-house distribution.

██ We elect to dispose of the case upon the assigned error "that there was insufficient evidence to sustain the verdict of the jury."

The dispute in the case centers around plaintiff's guarantee: "This rate guarantees the advertiser a house-to-house distribution in the entire Barnum district." Defendant admitted signing the writing, and plaintiff admits that he guaranteed Mrs. Donovan a house-to-house circulation, and asserts that he had a subscription list of about three thousand. It appears from the record that there are about 2,500 homes in the district and that the average number of papers printed weekly was about 3,000; that about 350 of these were paid subscriptions; that the balance of the papers was distributed free of charge to the recipients by boys hired by the publisher—about 225 papers per boy—each boy receiving twenty-five cents for his work; and that the distributors were instructed to put the papers on porches and blow a whistle as they did so.

A short time after having signed the alleged contract, defendant discovered, as she testified, that there apparently was considerable carelessness in the distribution of the papers by the boys, and, upon inquiry from a number of persons who came into her store, she concluded that she was not receiving a house-to-house distribution, whereupon she served plaintiff with a written notice cancelling her authorization to insert the ad.

One witness for defendant testified that he found a bundle of at least fifty of the papers in a can on a community dump, and that, although he lived in the Barnum district he had not heard any newsboy-whistle in over three years. Another witness testified that she

had not had a copy of the paper in three months; another that he received a paper about once in every six weeks; and another that he found a bundle of the papers stuck in a culvert. Contra, plaintiff produced a number of witnesses who testified they had received the papers regularly and had heard the whistle blown.

No appearance is made here for defendant in error, and the testimony of her witnesses is sought to be discredited. It is reasonable to assume that an actual house-to-house distribution as stipulated by plaintiff is a very difficult undertaking and it is not unlikely that some of the papers were blown away or picked up by strangers. However, there is no sufficient basis for adjudging that defendant's witnesses were not telling the truth, and apparently the jury, upon considering the evidence, under instructions which are not challenged, believed their testimony. A very reasonable inference which the jury would be justified in drawing under the circumstances, is that no newspaper publisher could hope for a complete house-to-house weekly distribution by boys who were expected to call at 225 houses, for a consideration of twenty-five cents.

"If a contract has been made upon the basis of misrepresented circulation figures the advertiser may appeal to court and have the contract set aside." Arthur and Crosman on The Law of Newspapers, page 266.

The testimony on the issue was conflicting, but we think there was sufficient competent evidence to sustain the verdict.

Judgment affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE BURKE concur.